IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2003

## STATE OF TENNESSEE v. SAMMY CLAUDE WILSON

**Appeal from the Circuit Court for Carroll County**
**No. 02CR1918      C. Creed McGinley, Judge**

---

**No. W2002-02832-CCA-R3-CD - Filed September 2, 2003**

---

A Carroll County jury convicted the Defendant of manufacturing the controlled substance methamphetamine. The trial court sentenced the Defendant as a standard offender to four years and six months of incarceration. The Defendant now appeals, contending the following: (1) that insufficient evidence was presented at trial to support the conviction; and (2) that the jury's indication on the special verdict form showed its confusion with regard to the trial court's instructions rendering the verdict unsustainable or, in the alternative, constituting "plain error." Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Dwayne D. Maddox, III, Huntingdon, Tennessee, for the appellant, Sammy Claude Wilson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Renee W. Turner, Assistant Attorney General, Robert "Gus" Radford, District Attorney General; Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Facts

On March 18, 2002, Officer James Randy Kelly of the Bruceton Police Department observed a dark-colored Camaro traveling west on Broad Street with no tail lights. Officer Kelly initiated a traffic stop and noticed three occupants inside the vehicle. When approaching the window of the automobile to request the driver's licence, the officer smelled a strong chemical odor he believed to be associated with the manufacture of methamphetamine. Another officer arrived on the scene to assist Officer Kelly.

Thereafter, Officer Kelly requested and obtained permission from the driver to search his automobile. The Defendant, Sammy Claude Wilson, was seated in the passenger side of the front seat, and a third passenger was located in the back seat of the automobile. The third passenger was removed from the automobile and placed in Officer Kelly's police car prior to the search. Officer Kelly then requested that the Defendant step out of the car, and the Defendant did so reluctantly.

When searching the automobile the officers found a black garbage bag containing a fruit jar with a discolored lid in the front seat by the console. Inside the fruit jar was liquid that smelled like ether and anhydrous ammonia. Also in the automobile, the officers found three coffee filters full of a wet powder substance and night vision binoculars. Officer Kelly testified that these items were all consistent with the process of the manufacture of methamphetamine. The officer performed a field test on the wet powder substance, and it tested positive for methamphetamine.

After finding these items in the automobile, Officer Kelly placed all three occupants of the vehicle, including the Defendant, under arrest. A search of the Defendant's person showed that he was in possession of: Sudafed tablets; "shop" towels; a rubber glove; a part of a flashlight shaped like a funnel, which was discolored; and batteries. The officer testified that Sudafed tablets can be ground and processed into methamphetamine. Further, he testified that "shop" towels are used to assist in crushing the tablets and that rubber gloves are often used by people producing methamphetamine because the chemicals involved can cause injury when coming into contact with skin. The officer also testified that funnels are often used in the production of methamphetamine so as to not waste any excess liquid created during the manufacturing process. Additionally, the officer testified that lithium batteries are often used in the production of methamphetamine, but that the batteries found on the Defendant were not lithium and, therefore, would not aid in methamphetamine production.

The officer sent the powder substance to the TBI Crime Laboratory for further testing. The TBI Crime Laboratory instructed the officer to dry the powder prior to sending it, which he did. The TBI Crime Laboratory test indicated that the substance submitted by the officer was not a controlled substance. The officer testified that methamphetamine evaporates from the wet powder substance when it is dried, causing subsequent tests to return negative for a controlled substance.

The Defendant was indicted by a grand jury for "intentionally or knowingly manufactur[ing] a controlled substance identified as METHAMPHETAMINE, A SCHEDULE II CONTROLLED SUBSTANCE, in violation of T.C.A. 39-17-417a)(1)(c)(2) . . . ."[1] At trial, the only testimony offered was Officer Kelly's and the TBI Crime Laboratory report was stipulated to by the parties and entered by the court. At the close of trial the Defendant's counsel made a Motion for a Judgment of Acquittal, which the trial court denied. After closing arguments, the jurors were given a special verdict form upon which they were to indicate whether they found the Defendant guilty of "Manufacturing of Methamphetamine a Schedule II, controlled" or the lesser-included offense of

---

[1]The Defendant was also indicted for possession of methamphetamine and evading arrest. The trial court, upon motion of the Defendant, dismissed both these charges, and they are not at issue in this case.

"possession of Methamphetamine a Schedule II, controlled." The trial court instructed the jury to consider the offense of manufacture of a controlled substance and "if the State has failed to prove these elements beyond a reasonable doubt, then [to] should consider the lesser-included offense of possession of a Schedule drug . . . ." The jury returned the verdict form with an indication of guilt for both the charged offense and the lesser-included offense. The trial court informed the jury that the finding of guilt for the lesser-included offense would merge with the finding of guilt on the charged offense. For clarification, the trial court polled the jury to insure that each juror agreed to a finding of guilt on the manufacture of a controlled substance. All the jurors affirmatively responded to the inquiry as to whether the Defendant was guilty of the charged offense. The trial court entered the judgment, and, thereafter, the Defendant filed a Motion for a New Trial, which the trial court denied.

Before this Court the Defendant contends that the evidence was insufficient to find him guilty of the manufacture of methamphetamine. Further, the Defendant asserts that the jury's response on the special verdict form proved it was confused by the trial court's instruction, rendering the verdict unsustainable. Alternatively, the Defendant asserts was that the jury's response resulted in "plain error."

## II. Sufficiency of the Evidence

The Defendant contends that insufficient evidence was presented to support his conviction. When an accused challenges the sufficiency of the evidence, "the standard for review by an appellate court is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Smith*, 24 S.W.3d 274, 278 (Tenn. 2000) (quoting *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999)); *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *Smith*, 24 S.W.3d at 279; *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *Buggs*, 995 S.W.2d at 105; *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *Liakas*, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *Id.*

In the case under submission, the Defendant was found guilty of an offense pursuant to Tennessee Code Annotated section 39-17-417 (1997 & Supp. 2002). That code section makes it an offense "for a defendant to knowingly: (1) Manufacture a controlled substance . . . ." Tenn. Code Ann. § 39-17-417. Methamphetamine is a schedule II controlled substance. Tenn. Code Ann. § 39-17-408 (d)(2) (1997 & Supp. 2002). The term manufacture:

> [M]eans the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container . . . .

Tenn. Code Ann. § 39-17-402 (14) (1997).

The Defendant asserts that the evidence is insufficient for any rational trier of fact to find, beyond a reasonable doubt, that he committed the offense of manufacturing methamphetamine. In support of this assertion the Defendant relies on the TBI Crime Laboratory test that found the substance analyzed negative for a controlled substance. Accordingly, the Defendant argues, his conviction for manufacturing a controlled substance cannot stand because the substance tested negative for a controlled substance. We cannot agree with the Defendant's contention.

Viewing the evidence in the light most favorable to the State, it is clearly sufficient to support the conviction. The evidence presented at trial showed that the field test of the wet powder substance tested positive for the presence of methamphetamine. Further, Officer Kelly testified that when the powder is dried, as it was prior to sending to the TBI Crime Laboratory, the methamphetamine evaporates from the powder, and the dried powder will test negatively for presence of methamphetamine. The Defendant did not offer any testimony to contradict this testimony of Officer Kelly. Accordingly, any reasonable trier of fact could find beyond a reasonable doubt that the Defendant committed the offense of manufacturing methamphetamine.

### III. "Plain Error"

The next issue raised by the Defendant is whether the special verdict form submitted to and returned by the jury indicated that the jury did not comprehend the charge by the trial court, rendering the verdict unsustainable. Alternatively, the Defendant argues that the special verdict form constitutes "plain error" pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure. The State argues that the Defendant waived this issue by not raising it in his Motion For New Trial and that the circumstances do not constitute "plain error." We agree and hold that the trial court did not commit "plain error."

The form in questions reads:

| OFFENSE OR LESSER INCLUDED OFFENSE | RANGE OF FINE | VERDICT (CIRCLE ONE) | FINE |
|---|---|---|---|
| Manufacturing of Methamphetamine a Schedule II, controlled | $ 3,000 up to $100,000 | not guilty/guilty | _____ |
| **lesser included offense:** possession of Methamphetamine a Schedule II controlled | $ 750 up to $ 2,500 | not guilty/guilty | _____ |

The trial judge instructed the jury that:

> As you were earlier instructed, the Defendant was charged with the crime of manufacturing a controlled substance. You should fairly and impartially consider the evidence and determine if the State has proven beyond a reasonable doubt the elements of the crime charged. The elements have been previously defined for you on page twelve.
>
> If the State has failed to prove these elements beyond a reasonable doubt, then you should consider the lesser-included offense of possession of a Schedule drug as defined on page fourteen.

The court then instructed the jury that if they found the Defendant guilty of either offense they should set a fine within the minimum and maximum allowed by law.

On the completed special verdict form the jury circled guilty as the verdict for both the Manufacturing of Methamphetamine and possession of Methamphetamine. The jury then set a fine for the Manufacturing of Methamphetamine at $10,000, and set a fine for the possession of Methamphetamine at $2,500. After receiving the special verdict form from the jury, the trial judge informed the jury that:

> In this case, [the special verdict form] indicates that you, the jury, find the Defendant guilty of the offense of manufacture of methamphetamine, a Schedule II controlled substance, and you set a fine of ten thousand dollars ($10,000); is that correct:
>
> You also set a fine on simple possession. You found him guilty, but that will be absorbed in the greater charge. Do you understand that?

The judge then polled the jury to insure that there was a unanimous verdict of guilty on the offense of manufacture of a methamphetamine.

The Defendant contends that the special verdict form that was returned by the jury indicates that the jury was confused and that the verdict cannot stand. The Defendant's failure to raise the issue in his Motion For a New Trial precludes our review of this issue, subject to our noticing "plain error." *See* Tenn. R. App. P. 3(e) (providing that "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in the motion for new trial. . . . ); Tenn. R. App. P. 36(a) (providing that relief is not required for a party who failed to take reasonably available action to prevent or nullify an error).

Pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure, we have discretion to notice an error that has affected the substantial rights of an accused when necessary to do substantial justice. *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). Before an error may be recognized it must be "plain" and must affect a "substantial right of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." *United States v. Olano*, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous, but especially egregious error that strikes at the fairness, integrity, or public reputation of judicial proceedings. *See State v. Wooden*, 683 S.W.2d 553, 559 (Tenn. Crim. App. 1983). When considering whether "plain error" exists we consider the following factors:

(a) the record must clearly establish what occurred in the trial court;
(b) a clear and unequivocal rule of law must have been breached;
(c) a substantial right of the accused must have been adversely affected;
(d) the accused did not waive the issue for tactical reasons; and
(e) consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (adopting the test articulated by the Court of Criminal Appeals in *Adkisson*, 899 S.W.2d at 641-42 ). All five factors must be established by the record before an appellate court will recognize the existence of "plain error," and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id*. In addition, the "'plain error' must [have been] of such a great magnitude that it probably changed the outcome of the trial." *Adkisson*, 899 S.W.2d at 642.

After a thorough review of the record in this case, we conclude that the "plain error" doctrine cannot afford the Defendant relief. As stated above, the plain error must be of such a magnitude that it probably changed the outcome of the trial. In the case under submission, the jury's indication of guilty as to both the charged offense and the lesser-included offense did not change the outcome of the trial. The jury found the Defendant guilty of both offenses charged against him and then the trial court polled them to insure that the verdict finding the Defendant guilty of the manufacture of methamphetamine was unanimous. The jury's improper completion of the special verdict form does not clearly show that the outcome of the trial would probably have changed had they understood the instructions articulated to them by the trial court. Rather, it shows that they would have found the Defendant guilty of the manufacture of methamphetamine and not gone farther in reaching a verdict

on the possession charge. Accordingly, the trial court did not commit "plain error" in accepting the jury's verdict on the manufacturing of methamphetamine offense.

## IV. Conclusion

In accordance with the foregoing, we find that the evidence was sufficient to convict the Defendant of the charged offense of manufacturing of methamphetamine. Additionally, we find that the trial court did not commit "plain error." Therefore, we affirm the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE